Orly Taitz, Esq
Attorney & Counselor at Law
26302 La Paz, Suite 211
Mission Viejo Ca 92691
ph. 949-683-5411
fax 949-586-2082
California Bar ID No. 223433
(Application for Admission Pro Hac Vice
U.S.D.C. Middle District of Georgia
Submitted July 10, 2009)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| MAJ. GEN. CAROL DEAN CHILDERS, | § | |
| LT. COL. DAVID EARL GRAEF, | § | |
| MAJOR STEFAN FREDERICK COOK, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| COLONEL LOUIS B. WINGATE, | § | Civil Action: |
| COLONEL WANDA L. GOOD, | § | **4:09-cv-00082-CDL** |
| COLONEL THOMAS D. MACDONALD, | § | |
| DR. ROBERT M. GATES, UNITED | § | |
| STATES SECRETARY OF DEFENSE, | § | Rule 65 Application for |
| BARACK HUSSEIN OBAMA, *de facto* | § | Preliminary Injunction |
| PRESIDENT of the UNITED STATES, | § | |
|     Defendants. | § | |

## APPLICATION FOR PRELIMINARY INJUNCTION

Plaintiff Major Stefan Frederick Cook previously received from the Defendants in this cause what appear to be facially valid orders from Colonel Wanda L. Good mobilizing him to active duty with the United States Army in Afghanistan on July 15-18, 2009 (Exhibit A). Plaintiff filed his Original Application for TRO on Friday July 10, 2009, and on Tuesday, July 14, 2009 his deployment to Afghanistan was revoked by order of Colonel Louis B. Wingate, apparently Col. Good's successor at Army Human Resources Command in St.

*Rule 65 Application for Preliminary Injunction*    1

Louis (Exhibit B).  This unexpected action does not in any way, shape or form, "moot" the application for TRO, which is here amended and resubmitted as an Application for Preliminary Injunction, covering both the possibility of future orders and to prevent negative collateral consequences such as retaliation against Major Stefan Frederick Cook (which have already begun) including possible violations of the general Federal and specific military whistleblower acts, as well as the First and Ninth Amendment civil rights of Major Stefan Frederick Cook to challenge the chain of command in the U.S military.  It is obvious that this case has the potential to be converted into a class action on behalf of all military servicemen and women who require the means of establishing the legality of their orders with certainty.

This Court has the authority to hear cases which might otherwise be moot so long as they present: 1) an unsettled legal issues of public interest and importance and 2) an issue of a recurring nature that will escape review unless the Court exercises its discretionary jurisdiction.  Major General Carol Dean Childers retired but subject to lifetime recall, and Lt. Col David Earl Graeff – Medical Surgeon in US Airforce Active Reserves, subject to recall any day, join in this Application for Preliminary Injunction because it is a matter of unparalleled public interest and importance and because it is clearly a matter arising from issues of a recurring nature that will escape review unless the Court exercises its discretionary jurisdiction.

**<u>DOD RETALIATION AGAINST MR. COOK IS SWIFT AND BRUTAL</u>**

Moreover, however, retaliation has occurred or begun against Plaintiff Stefan Frederick Cook for the exercise of his First Amendment right to petition

for redress of grievances and Plaintiff Cook accordingly here seeks an injunction against the continuance or full implementation of this official governmental retaliation or in the alternative for a writ of mandamus, order to show cause, or rule *nisi* be issued to the Department of Defense commanding it to cease, cure, or remedy all retaliation against Plaintiff Cook.  The circumstances are as follows:

Late on Tuesday afternoon, July 14, 2009, at around about 4:30 pm, Plaintiff Stefan Frederick Cook returned a call to an unknown telephone call from (813) 828-5884 and was told that his services were no longer required in Afghanistan and that he need not report for duty.  In addition Plaintiff an e-mail with the revocation order attached from Master Sargent Miguel Matos (Exhibit C).  Upon receipt of the revocation, Plaintiff Major Cook called his civilian boss, the CEO of Simtech, Inc., a closely held corporation that does DOD contracting in the general field of information technology/systems integration, at which Plaintiff Major was employed until taking a Military Leave of Absence on Friday July 10, 2009, a senior systems engineer and architect, in preparation for his deployment to Afghanistan.  (Plaintiff has five Cisco Systems certifications in information technology dating from 2000 and just recertified in June 2009 for the Cisco Certified Design Expert qualification exam.)

The CEO of Simtech, Inc., Larry Grice, explained to Plaintiff over a series of four conversations within the next two hours, that he had been terminated.  Grice told the Plaintiff that he would no longer be welcome in his former position at SOCOM but that Grice wanted to see whether he could find something within the company (Simtech, Inc.) for Cook.  The upshot was that at this time Grice did not have anything for Plaintiff to do.  Grice told Plaintiff, in essence, that the

situation had become "nutty and crazy", and that Plaintiff would no longer be able to work at his old position.

Grice explained that he had been in touch with Defense Security Services (an agency of the Department of Defense[1], with regional offices located in SOCOM Headquarters at McDill Airforce Base in Tampa, Florida), and that DSS had not yet made a determination whether Plaintiff Major Cook's clearances would be pulled, but Grice made clear to Cook that it was DSS who had compelled Cook's termination.   Essentially, because of the "nutty and crazy" situation and the communications received from DSS was no longer employable by him at all.   So he was not optimistic about getting me another job at the company.   Grice also reported to Plaintiff that there was some gossip that "people were disappointed in" the Plaintiff because they thought he was manipulating his deployment orders to create a platform for political purposes.   Grice then discussed Plaintiff's expectation of receiving final paychecks (including accrued leave pay) already owed, without any severance pay, and wished the Plaintiff well.

A federal agency (such as the Department of Defense, acting through the Defense Security Services Agency) clearly violates the Whistleblower Protection Act if it takes or fails to take (or threatens to take or fail to take) a personnel action with respect to any employee or applicant because of any disclosure of information by the employee or applicant that he or she reasonably believes

---

[1]    The Defense Security Service (DSS) is an agency of the United States Department of Defense (DoD). Within areas of DoD responsibility, DSS is tasked with facilitating personnel security investigations, supervising industrial security, and performing security education and awareness training. It is not a Federal law enforcement organization; it does not have police powers. Originally known as the Defense Investigative Service (DIS), DIS was established in 1972. DSS changed from DIS in 1999.

evidences a violation of a law, rule or regulation; gross mismanagement; gross waste of funds; an abuse of authority; or a substantial and specific danger to public health or safety.   What has happened in the present case of Stefan Frederick Cook is that a federal agency appears to have taken action against Stefan Frederick Cook's private employer, Simtech, Inc., which is a closely held corporation owned and operated by members of a single family, who are as much victims of the Department of Defense' heavy-handed interference with Plaintiff Cook's private-sector employment as is Plaintiff Cook himself.

**AN OFFICER'S DUTY TO OBEY *LAWFUL* ORDERS:**

This Plaintiff, at the time of his original induction into service, took the United States, military oath of an enlisted man, which reads:

> "I, Stefan Frederick Cook, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to the regulations and the Uniform Code of Military Justice. So help me God"

Later, however, he took the oath of an officer of the United States Armed Forces, as follows:

> "I, Stefan Frederick Cook, having been appointed an officer in the Army of the United States, as indicated above in the grade of Major do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign or domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservations or purpose of evasion; and that I will well and faithfully discharge the duties of the office upon which I am about to enter; So help me God." (DA Form 71, 1 August 1959, for officers.)

This oath is based on 5 U.S.C. §3331:

> An individual, except the President, elected or appointed to an

office of honor or profit in the civil service or uniformed services, shall take the following oath: "I, AB, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God." This section does not affect other oaths required by law.

See also: http://www.history.army.mil/faq/oaths.htm

An officer does not swear to obey the orders of the President. Rather, he assumes the obligation to defend the Constitution against all enemies, foreign and domestic (for example, a possible Presidential Usurper, if it were shown by clear-and-convincing evidence that a person took the office under false pretenses of constitutional qualifications). The Founding Fathers had the foresight to protect and secure against a situation such as that now facing the United States. The officer oath is a safeguard to protect the Constitution against a corrupt elected government. Officers have an obligation to defend the Constitution. The officer oath does not even mention following the UCMJ laws as does the enlisted oath. Furthermore, Plaintiff Stefan Frederick Cook carries with him a card entitled "Army Values" issued by the United States Army (Exhibit D), which commands in part as follows:

"Bear truth faith and allegiance to the United States Constitution, the Army, your unit, and other soldiers."

"Put the welfare of the Nation, the army, and your subordinates before your own."

"Do what's right, legally and morally."

"Face fear, danger, or adversity (physical or moral)."

*Rule 65 Application for Preliminary Injunction*                                      6

Title 10, Subtitle A, Part II of the United States Code contains the Uniform Code of Military Justice (UCMJ).  10 U.S.C. §890 (ART.90), makes it an offence subject to court-martial if any military personnel "willfully disobeys a **lawful** command of his superior commissioned officer," 10 U.S.C. §891 (ART.91) "**lawful** order of a warrant officer", and most importantly, 10 U.S.C. §892 (ART.92) provides court-martial for any officer who

> (1) violates or fails to obey any **lawful** general order or regulation;
> (2) having knowledge of any other **lawful** order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or
> (3) is derelict in the performance of his duties;

In each case, Plaintiff submits that it is implicit though not expressly stated that an officer is and should be subject to court-martial, because **he will be derelict in the performance of his duties, if he does not inquire as to the lawfulness, the legality, the legitimacy of the orders which he has received, whether those orders are specific or general.**

Unfortunately the Uniform Code of Military Justice does not provide a means for ascertaining the legality of orders, and accordingly, this Plaintiff is left with no choice but recourse to the ordinary civil courts of the United States to seek a determination of what he considers to be a question of paramount constitutional and legal importance: the validity of the chain of command under a President whose election, eligibility, and constitutional status appear open to serious question.

Plaintiff Major Stefan Frederick Cook is not a pacifist.  He does not object to war or the use of military force in the implementation of national policy or the enforcement of international law.  Above all, Plaintiff is not a coward, he is not

*Rule 65 Application for Preliminary Injunction*                    7

engaged in mutiny, sedition, insubordination, contempt, disrespect, or any kind of resistance to any general or specific l**awful** order of which he knows or has received notice.

Plaintiff Major Stefan Frederick Cook realized and accepted as a matter of political reality (although it is very hard for him to bear personally) that many might criticize or even shun him, saying that he is not acting in the best interests of his country for trying to uphold the plain letter of the Constitution. Others may cynically ridicule this Plaintiff when, as an officer responsible not only to obey those above him but to protect those under his command, he comes to this Court asking for the right to establish the legality of orders received not only for his own protection, but for the protection of all enlisted men and women who depend on HIS judgment that the orders he follows are legal.

Above all, when Plaintiff Major Stefan Frederick Cook submitted and contended, as he continues to submit and contend, that he filed and will prosecute this lawsuit and seeks a preliminary injunction against the Defendants' enforcement of potentially illegal orders for the benefit of all servicemen and women and for the benefit all officers in all branches of the U.S. Military, he knew that those in power illegitimately may seek to injure his career, although frankly, he had no idea how fast they would work, or that his civilian career would be ended within five days of exercising his First Amendment Right to Petition for Redress of Grievances. He knew that he risked all and he did and continues to do so in the conscientious belief that he does so for not merely his own, but the general good. It is also now true that the Department of Defense has taken retaliatory action against this Plaintiff through DSS, and that Plaintiff now has

nothing more to lose, and must defend his civil rights, his constitutional duty (oath of office as an officer) and above all his honor and his good name against all those who would and have criticized him for making the decision to stand up and demand proof.

Quite simply, the Plaintiff cannot escape from the mandates of his conscience and his awareness, his educated consciousness, that all military personnel but especially commissioned officers have an obligation and a duty to only obey Lawful orders and indeed have an obligation to disobey Unlawful orders, including orders by the president that do not comply with the UCMJ. The moral and legal obligation is to the U.S. Constitution and not to those who would issue unlawful orders, especially if those orders are in direct violation of the Constitution and the UCMJ.

Professor Hitomi Takemura of Kyushu University has recently (December 5, 2008) published a book entitled: ***International Human Right to Conscientious Objection to Military Service and Individual Duties to Disobey Manifestly Illegal Orders*** (New York: Springer-Verlag).  This book stands as an international legal analysis of the duties of military officers, and it is significant, if not possibly somewhat ironic, that President Barack Hussein Obama has repeatedly argued that the United States should conform itself to international law and customs.  Plaintiff does not in this case seek a judicial determination of whether or not there is a general duty to disobey all unlawful orders, but rather to decide whether an officer, such as the Plaintiff, may seek judicial determination of the lawful or unlawful nature of an order based on a constitutional challenge to the chain of command originating from a probably

ineligible President and Commander-in-Chief.  Plaintiff files this suit to clarify how he can both obey all lawful orders and avoid dereliction of his duties so as to escape court-martial under the UCMJ if he does NOT question the legality of the orders he has received.  Plaintiff seeks to avoid not only court-martial in this country, but also treatment as a war-criminal or terrorist, not eligible even for protection under the Geneva convention, if he were found to be a merely mercenary soldier in a private army of slaves, "owned" or controlled by an unconstitutional and therefore illegal commander, if he does not ask the question: "is this order legal?"

## NEVER BEFORE IN THE HISTORY OF THE UNITED STATES

Plaintiff presents the key question in this case as one of first impression, never before decided in the history of the United States: Is an officer entitled to refuse orders on grounds of conscientious objection to the legitimate constitutional authority of the current de facto  Commander-in-Chief?  In the alternative, is an officer entitled to a judicial stay of the enforcement of facially valid military orders where that officer can show evidence that the chain-of-command from the commander-in-chief is tainted by illegal activity?  In the alternative, does the issuance of orders based on a constitutionally infirm chain-of-command under Article II create or render military service as a mere "involuntary servitude" in violation of the Thirteenth Amendment which may be judicially enjoined?

Plaintiff seeks injunctive relief against the United States Department of Defense, and each of Plaintiff's commanding officers, as expressly authorized by 5 U.S.C. §702.   Specifically, Plaintiff alleges that he will suffer legally cognizable

but irreparable injury because of agency (U.S. Department of Defense) action if the order attached as Exhibit A were to be enforced, and that Plaintiff is adversely affected and aggrieved by this agency action within the meaning of Article II, §§1-2 of the United States Constitution, and is entitled to judicial review thereof. This action is filed in this United States District Court for the Middle District of Georgia, which venue is appropriate in that deployment from Fort Benning, Georgia, has been ordered to take place on July 18, 2009 (see Exhibit A).

This suit is filed seeking purely injunctive and declaratory relief (and no money damages) and the Complaint to be filed within 10-15 days of the filing of this Application for Preliminary Injunction (circumstances have changed so wildly in the past few days that it is impossible to have a complaint ready by the time of the first scheduled hearing on July 16, 2009, to be held in Columbus, Georgia) states a claim that the Department of Defense and its officers, including the *de facto* President Barack Hussein Obama, as *de facto* Commander in Chief, together with Secretary of Defense Robert M. Gates, and Colonels Louis B. Wingate, Thomas D. MacDonald and Wanda L. Good as employees thereof, have acted illegally/i.e., without actual legal authority (valid chain of command) in issuing this order, or else failed to act in a ***de jure*** official capacity at all, or else have acted under color of legal authority by pretending that a lawful chain of command under the authority of a constitutionally qualified and elected President has been established pursuant to Article II, §§1-2 of the United States Constitution, when in fact, the current ***de facto*** Commander-in-Chief is not constitutionally qualified nor was he legally elected or appointed to succeed to the office of President of the United States.

Pursuant to 5 U.S.C. §702 this Application and Complaint yet to be filed may proceed and shall not be dismissed nor relief therein be denied on the ground that the Court may determine that this suit is filed against the United States or that the United States is an indispensable party[2].

Plaintiff submits that this court is required by federal common law to enter a Preliminary Injunction in this case and to enjoin Defendants' persecution of and retaliation against Plaintiff Stefan Frederick Cook for questioning the legitimacy of the chain of command predicate to the validity of to the orders contained in Exhibits A, B, and C for the following reasons:

(1)    The United States Supreme Court has held that Federal rules are "necessary to protect uniquely federal interests".  ***Texas Industries, Inc., v Radcliff Materials, Inc.***, 451 U.S. 630, 640 (1981), *quoting* ***Banco Nacional de Cuba v. Sabbatino,*** 376 U.S. 398, 426 (1964).

(2)    Included in this category is the creation of federal common law to protect federal interests in international law, which are particularly relevant to the legitimacy of United States military presence and intervention in foreign countries, of which the Plaintiff herein will be an integral part and instrument if the orders set forth in Exhibit A are not enjoined from enforcement.  ***Id.***

(3)    The issue or question raised by this suit is uniquely federal and properly (and in fact necessarily) subject to the exercise of federal power: the question

---

[2] 5 U.S.C. §702 states in relevant part:
>       The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

whether the constitutional legitimacy of the chain of command under a constitutionally legitimate commander-in-chief pursuant to Article II, §§1-2 of the Constitution is essential to the maintenance of balance of powers and separation of powers under the constitution, and cannot be lightly dismissed in light of the Plaintiff's evidence that the ***de facto*** President of the United States is not only constitutionally unqualified, but procured his election by fraudulent and illegitimate means which may constitute a pattern of racketeering utilizing the apparatus of corrupt organizations in violation of 18 U.S.C. §1961 *et seq.*

(4)     A substantive federal rule of law to govern this issue has never been developed, presumably because there has never been a serious challenge to the constitutional eligibility and legitimacy of any commander-in-chief of the United States Armed Forces prior to the apparent election of Barack Hussein Obama, but the novelty and uniqueness of this situation only underscores and does not diminish the critical nature of the inquiry to be made.  *See, e.g.,* Martha A. Field "Sources of Law: the Scope of Federal Common Law", **99 Harvard L. Rev. 881, 886 (1986)** and David J. Barron & Martin S. Lederman "The Commander-in-Chief at the Lowest Ebb—Framing the Problem, Doctrine, and Original Understanding," **121 Harvard L. Rev. 689, 712, 748 (2008)**.

(5)     It is probably not an overstatement to submit that there has never been a greater need to create federal law to safeguard federal interests than now, when the constitutional legitimacy of the President and by extension of all exercises of Presidential power are called into question.  There are no direct precedents in all of United States History, there are no state rules which could reasonably be applied.     To paraphrase the United States Supreme Court's holding in

*Clearfield Trust Co. v. United States*, "the rights and duties of the United States" in regard to the constitutional legitimacy and qualifications of its highest officers "are governed by federal rather than" any other law.  **318 U.S. 363 at 366 (1943).**

(6)    "The authority to" inaugurate the President and determine whether his orders are entered with legitimate authority or not have "its origins in the Constitutions and the Statutes of the United States and [is] in no way dependent upon the laws of" any particular state or foreign jurisdiction.  ***Id.*** at 366-7.

(7)    Few will dispute that the legitimacy of the President and of the Presidency itself is a matter of paramount concern (even exceeding that of the government issued commercial paper/checks at issue in ***Clearfield Trust***) and importance to the several states and all foreign jurisdictions which may have to deal with the most powerful nation in the world.  As noted above, the legitimacy of the Chief Executive and Commander-in-Chief affects the relationships of the Federal Government particularly with those nations in which this nation takes and implements action and policy by and through its military forces on foreign soil.  *See also* Erwin Chemerinsky **Federal Jurisdiction, 5th ed. (2007)** 363.

(8)    Thus, federal interests of incomparable dimensions exist which justify this court's creation of federal law and no challenged action instituted by the executive branch should be allowed to proceed until clear criteria have been established to guide this determination.  To hold otherwise would be to reduce the constitution to notions of ***realpolitik*** and a government of men asserting their power by force rather than laws.

(9)    Plaintiff submits that in the absence of a constitutionally valid and

legitimate commander-in-chief, he cannot serve to impose the military might and power of this country in a foreign land as a matter of principle. Plaintiff asks that he therefore be granted status as a conscientious objector on moral, religious and philosophical grounds, not that Plaintiff is a pacifist or in any way opposed to the use of military force to further the legitimate interests of the United States, but on the grounds that he cannot abide the notion that he might possibly be implementing by force the policy of a government whose executive power and commander-in-chief may have assumed power unlawfully and might have established themselves on a foundation of fraud, lies, and deceit.

(10)   The evidence contained in Exhibit E shows that Barack Hussein Obama might have used as many as 149 addresses and 39 social security numbers prior to assuming the office of President.  The social security number most commonly used by Barack Hussein Obama, is one issued in the state of Connecticut, the state where Barack Hussein Obama never resided and it shows him to be 119 years old. This coupled with the fact that Mr. Obama's grandmother, Madeline Dunham was a volunteer at the Oahu Circuit Court Probate Department and had access to the social security numbers of the deceased, constitutes circumstantial evidence casting serious doubt on the legitimacy of Mr. Obama and his claims of being born on US territory.  Exhibit F, the expert affidavit of renowned forensic document examiner Sandra Ramsey Lines, states that the certification of live birth posted by Mr. Obama as verification of his legitimacy, cannot be verified as genuine, and should be presumed fraudulent.

(11)   This doubt is further reinforced by the fact that the Hawaiian statute 338 allows **foreign born** children of Hawaiian residents to obtain Hawaiian birth

certificates, that those birth certificates can be obtained **based on a statement of one relative only** without any corroborating evidence from the hospital; that "**late birth certificates**" (i.e. non-contemporaneously, post-facto, in two words "potentially fabricated") can lawfully, under this statute, be obtained at any time later in life.

(12)   That is of paramount concern, as Barack Hussein Obama's original birth certificate was never provided by the state of Hawaii, but only a statement that there is an original "long birth certificate" document on file.  The statement repeatedly provided by Hawaiian officials is quite simply incomplete, evasive, and without explanation of critical details: namely, whether it is a foreign birth certification or one obtained based on a statement of one relative only, or a late certification or amended one, obtained upon adoption by his stepfather.  See Exhibit C: the Certification of Live Birth posted by Mr. Obama on the Internet, cannot be treated as genuine without examining the original on file with the Health department of the State of Hawaii.

(13)   In addition or in the alternative, Plaintiff submits that, absent clearly established and indisputable proof of constitutional right to serve as commander-in-chief, the army becomes merely a corps of chattel slaves under the illegitimate control of a private citizen, in violation of the Thirteenth Amendment and that this Plaintiff is entitled to constitutionally complete and sufficient proof of his commander-in-chief's eligibility and entitlement to serve in this capacity under Article I, §§1-2 prior to obeying orders from a man against whom mountains of evidence now exist (Exhibits E and F, and additional evidence which can be provided at the Preliminary Injunction hearing or in conjunction with the

Complaint to be filed in this case) to show that Barack Hussein Obama obtained the office of President without legal qualifications, and further that he did so by and through a continuous pattern and program of fraud and deceit.

(14)   A long line of cases now exists to show that 42 U.S.C. §§1983, 1988 may be used to bring suit against Federal Officials for violations of constitutional rights, and 42 U.S.C. §1988(a) specifically authorizes courts to adapt or fashion common law remedies to prevent constitutional violations where no adequate remedy exists or is set forth in law---such specially fashioned remedies would include expressly empowering military officers to challenge orders based on constitutional defects in the chain of command by means of equitable judicial proceedings such as this one, and to permit injunctions against deployment where the chain of command is reasonably subject to question.

(15)   Critical among the cases applying §1983 to suits against Federal (indeed, Military) officers, is the 1982 case of ***Harlow v. Fitzgerald*, 457 U.S. 731 (1982)** and closely related successor ***Mitchell v. Forsyth***, **472 U.S. 511 (1985).**  These cases held that U.S. Government officials (such as Defendants in this case) could only claim qualified immunity, and that even qualified immunity was available to them only if they followed well-established law and norms of construction or interpretation of law.

(16)   Plaintiff submits and here asks this Court to find, declare, and hold that the requirement that the President of the United States be a natural born citizen, set forth in Article II, §1 of the Constitution, creates a "clearly established ... constitutional right of which a reasonable person would have known." ***Harlow v. Fitzgerald*, 457 U.S. at 818.**

*Rule 65 Application for Preliminary Injunction*                    17

(17)    The right in question which Plaintiff asks this Court to define and recognize as a matter of first impression should be defined either as the unilateral right to disobey or the right to seek a judicial injunction against the enforcement of orders given on the unproven **de facto** authority of a government headed by a man against whom such evidence of  high likelihood of fraud as the affidavit of Neal Sankey (attached as Exhibit E) can be assembled from public records alone.

(18)    In other words, Plaintiff asks this Court to rule, declare, and adjudge, pursuant to 42 U.S.C. §1988(a), that an officer of the Army of the United States (all officers)!) must have the right to question apparently illegitimate authority in the courts or else in the course of his employment as an officer directly within the army chain of command or in both capacities and by both manners.  Current law does not establish any means of verifying the constitutional legitimacy of orders or the constitutional chain of command.

(19)    Unlike the Federal officers in **Wilson v. Layne** who brought reporters along with them when they executed search warrants (526 U.S. 703 [1999]), there IS a simple consensus of authority on the question of the requirement that the President be a natural born citizen sufficient to provide a basis for a reasonable army officer to doubt that his country's commander-in-chief might be accepted as legitimate outside the United States.  This Court should rule that a reasonable officer has the right to ask, indeed to demand, that a federal court enjoin his overseas deployment until such time as the answers raised by Barack Hussein Obama's use of multiple addresses (almost all outside of any reasonable connection to his "official" life history) and social security numbers, including at least one social security number of a deceased person (Exhibit B).

(20)   That this Plaintiff claims status as a conscientious objector must be clarified and emphasized in several ways: Plaintiff is no pacifist, nor an anti-war protester.   Plaintiff actually does want to go to Afghanistan and he verifies this fact, as he does this entire petition, under penalty of perjury (as required by Rule 65(b)(1).

(21)   Plaintiff believes that his service in Afghanistan would be positive and serve the interests of world peace, the advancement of the people of Afghanistan, and the security of the people of the United States (and the allies of the United States in Europe and around the world).

(22)   However, Plaintiff is also aware that the general opinion in the rest of the world is that Barack Hussein Obama has, in essence, slipped through the guardrails to become President.   The United States and her military, commanded by a man who has himself expressed pacifist and anti-military opinions, are the targets of derision and ridicule abroad.

(23)   The grounds for grant of a Preliminary Injunction are well known: (a) likelihood of success on the merits, (b) balance of hardships, (c) irreparable injury to Plaintiff, and (d) public policy favors the issuance of injunctive relief.

(24)   Plaintiff submits that as to the likelihood of success on the merits---since this is a question of first impression, Plaintiff should be awarded the temporary injunction regardless of the lack of precedent, (a) because of the critical nature of any serious question concerning the constitutional legitimacy of the President as Commander-in-Chief, (b) because of the critical federal interest in this question, especially from the standpoint of military presence abroad, in potentially if nor certainly hostile territory, (c) because of the mounting evidence of fraud on the

part of the *de facto* President shown in Exhibits E and F,  and (d) because of the well-known but as yet undecided question of Barack Hussein Obama's legitimacy, qualified immunity does not protect any officer from a potentially erroneous decision in this matter, Plaintiff's likelihood of success on the merits---at least on the question that standards need to be established for constitutional legitimacy of the President, and that military officers must have the right (especially in time of domestic peace and no known imminent invasion or attack on the country) to demand proof of legitimate chain of command.

(25)   As to balance of hardships, the Plaintiff Stefan Frederick Cook is a Patriotic American who voluntarily joined the army and placed his life on the line for the defense of freedom and the rule of law ("truth, justice, and the American way of life") as his career.

(26)   All three Plaintiffs have found reason to doubt the legitimacy of the Commander-in-Chief, and demands proof, at the very minimum, of the Barack Hussein Obama's constitutional legitimacy and eligibility, which is made more acute by the evidence of multiple addresses and social security numbers attached as Exhibit E.

(27)   However, Barack Hussein Obama, in order to prove his constitutional eligibility to serve as President, basically needs only produce a single unique historical document for the Plaintiff's inspection and authentication: namely, the "long-form" birth certificate which will confirm whether Barack Hussein Obama was in fact born to parents who were **both citizens of the United States** in Honolulu, Hawaii, in or about 1961.  It is no answer to show the short-form birth certificate which has no seals and is signed by no one and is produced, as most

*Rule 65 Application for Preliminary Injunction*                    20

birth-certificates are, by computerized reproduction.  In light of Exhibits E, the affidavit of Neal Sankey, as well as Exhibit F, Plaintiff submits under his sworn acknowledgement and verification below, that only final proof of Barack Obama's natural born citizenship by authentic, and authenticated, legal documents will prevent this Plaintiff from fear that he is serving a false master, a false commander-in-chief, a false President, and thereby violating the international laws of nations by acting without legitimate authority.

(28)   However, as a practical matter, the mere execution by the President of a comprehensive medical release under HIPAA (Privacy Rule of the Health Insurance Portability and Accountability Act of 1996) would permit the Plaintiffs to obtain most of the information which they are seeking; separate releases of the President of his personal passport files and history maintained by the United States Department of State and Social Security Commission would resolve all other questions raised by Exhibits E and F.

(29)   Accordingly, the President needs to sign three releases concerning his personal and private history prior to becoming President, and the President cannot possibly suffer any unjustified inconvenience or harm from the execution of these documents, especially since Presidents have historically disclosed their full medical histories as a routine matter of public interest and concern.

(30)   The balance of equities, the balance of hardships, clearly favor the entry of this Temporary Restraining Order.  From the Plaintiff's standpoint, if the history of World War II and the Nuremberg Trials teaches us anything, it is that no military officer should ever rely on "apparent" authority or "facial" legitimacy of orders.  Every officer has an independent duty to use his conscience and evaluate

the legitimacy of the chain of command under which he operates, and when reasonable doubts arise, the Courts should afford remedy and protection.  If Plaintiff were to proceed to wage war on the people of Afghanistan, even the Taliban and other proven sponsors of terrorism, under the orders of an illegitimate President, Plaintiff runs the risk of acting as a ***de jure*** war criminal---not entitled to the protections of international law at all.

(31)    All that is asked of the President is that he humbly acknowledge and produce his true and complete "original" birth certificate.  So long as this form proves the Barack Hussein Obama's status as a "natural born" citizen, the President and the Presidency will not only have suffered no harm, but will have reaffirmed the faith of the people in the rule of law as dominating all men, including the President of the United States.

(32)    As discussed above, the balance of the equities and hardships shows that, so long as the President is and has always been honest and truthful about his place of birth and parentage, he will suffer no harm at all---and if the President has not always been honest and truthful about his origins, then he will suffer no unjustified harm or injury as a result of the necessary disclosures.

(33)    However, the potential harm to the Plaintiff if relief is denied is that he will be required to serve heavily burdened by a doubtful and unwilling conscience, which in itself is and ought to be repugnant to a free society.  Involuntary servitude was abolished in 1865, and this Court should not underestimate the crisis of confidence which an order of unquestioning obedience will have, nationwide, on the legitimacy and "full faith" which can be accorded to its officers and their actions.

(34)   A man who doubts his commander-in-chief cannot be a good soldier, unless he is instructed that "following orders" is the highest virtue of all, and surely the Nuremberg Trials, and the Trial of Adolf Eichman in Jerusalem, have proven this position false and dangerous to civilization and the moral and ethical administration of government.   This harm, this injury to conscience, is not speculative, it is not remote, it is immediate and without any legal remedy of damages or later honor bestowed as a result of service.

(35)   Perhaps slightly more remote and speculative, but possible, plausible, and by no means without precedent in the past century is the possibility that if THIS Plaintiff is not allowed access to the truth, someone else may yet expose that the current **de facto** President serves in mockery and defiance of the Constitution, and that all his military adventures abroad will eventually be classified as private, slave armies engaged in private, piratical warfare unsanctioned by International Law and subject this Plaintiff to prosecution as a war criminal.

(36)   As far as public policy goes, allusion has already been made to the crisis of public confidence---even if only 10-20 percent of the American people believe that Barack Hussein Obama is lying about or hiding the details of his true place of birth or national origins---this Court would be doing the public interest a great service by protecting this Plaintiff's right to conscientiously object based on his reasonable and well-founded doubts concerning the chain of command originating from a questionable commander-in-chief.

(37)   Furthermore, judicial resolutions of festering doubts and lack of confidence can diffuse social tension and re-establish confidence in the rule of law more generally.

(38)   Plaintiff points out that there was another time in United States history when officers of the military were forced to make a choice whether to follow the central government or their consciences.  That time in United States history was in 1861 when some of the finest officers of the United States Army felt that they and their constitution had been betrayed by the central government, and that is how Mexican War heroes Jefferson Davis and Robert E. Lee, among so many others, became the leaders of the Confederate States of America.

(39)   There were no lawsuits filed at that time---5 U.S.C. §702 and 42 U.S.C. §§1983-1988 had not yet been enacted.  But the public interest is served by permitting Army officers to seek judicial protection and assistance when they question the legitimacy and authority of the commander-in-chief with regard to moral and constitutional issues.

(40)   There are no "competing" governments now---no seceding states, however over 30 states have either passed or considered the bills of Sovereignty lately, which can be a step towards secession and a sign of vast dissatisfaction with the Federal government and the President.

(41)   In historical hindsight it is easy to say the Jefferson Davis and Robert E. Lee hurt their own states of Mississippi and Virginia by supporting secession.

(42)   In historical hindsight it is easy to say that even the pro-slavery cause might have been better served by acquiescence under Abraham Lincoln, who (absent secession and civil war) lacked any realistic legal power, as President in 1861, to interfere with slavery in any state or territory where it already existed.

(43)   Plaintiff submits that judicial resolution of festering sores such as occur when people feel they cannot trust their leaders to follow the law, to live by the

*Rule 65 Application for Preliminary Injunction*                    24

law, and to respect the concerns of all the people, especially when it will cost their leaders almost nothing to restore or bolster confidence, is a major public policy reason why this Application for Preliminary Injunction should be granted.

### MOOTNESS AND JUSTICIABILITY OF APPLICATION FOR INJUNCTION UNDER RULE 65

This application for Application for Preliminary Injunction will be served on all parties named, but as required, will in addition be served on Maxwell Wood, the United States Attorney for the Middle District of Georgia, resident in Macon, Georgia, with offices in Athens, Columbus, Macon and Valdosta, Georgia, as required by law, as well as on Eric Holder, the Attorney General of the United States of America.

The timing of Plaintiff Stefan Frederick Cook's receipt of the rescission of his orders on July 14, 2009, and the sudden the cancelation of his imminent deployment from Fort Benning to Afghanistan, do not render any part of this action declaratory judgment and injunction moot. In fact, because the orders could be reinstated at any time, there is now more than adequate time to render effective relief. Effective relief is still required and can still be ordered at this stage for the Plaintiffs, including all those subject to recall or mobilization to active duty at any time in the future. *See Bernhardt v. County of Los Angeles,* 279 F.3d 862, 871 (9th Cir.2002).

Article III, Section 2 of the Constitution limits federal court jurisdiction to "cases" and "controversies." This case or controversy requirement exists through all stages of federal judicial proceedings. *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). A number of doctrines have developed,

however, to permit courts to review a case in which it is no longer possible to remedy the particular grievance giving rise to the litigation.

One is the exception to the mootness doctrine for violations "capable of repetition, yet evading review." *See, e.g., Gerstein v. Pugh,* 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).   This is such a case.  It is most unlikely that any given individual could have his constitutional claim decided on appeal after he is ordered to duty but before his actual deployment.   In *Gerstein* the Supreme Court held the exception to the mootness doctrine for violations "capable of repetition, yet evading review" applied because the constitutional violation was likely to be repeated but would not last long enough to be reviewed before becoming moot. *Id.*

An order to a reserve officer to be deployed in active duty is ordinarily even more temporary than the pretrial detention at issue in *Gerstein*. This case evades review for essentially the same reason. The Plaintiffs could not have brought the challenges to this court before the harm of issuance of illegal orders without proper chain of command could be addressed or resolved judicial.

This situation giving rise to this challenge also is capable of repetition. Plaintiffs can only assume that issuance of orders to mobilize will be recurring on the part of these defendants. *See O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).   This case is therefore not readily distinguishable from an abortion case, the classic case capable of repetition yet evading review, because we can assume a woman can become pregnant again. *See generally Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).   Some cynics might say that Barack Hussein Obama's refusal to document his personal and

medical history once challenged has amounted to an abortion of the legitimacy of the American Presidency, and of the confidence of the people, especially the men and women of the United States Armed Forces, who serve directly under his ***de facto*** Command and long for a show of clear and convincing ***de jure*** validation of his commitment to the Constitution and Rule of Law as applied to all citizens.

This makes no material difference, however, because a future mobilization order assuredly will surely be issued against some officers of the United States Army, and the shackling policy would similarly escape review.  Furthermore, it appears to be a policy of the Federal Government to avoid answering questions about ***de facto*** President Barack Hussein Obama's constitutional qualifications to occupy the White House and serve as commander-in-chief.  Thus, this case is capable of repetition when because defendants are challenging an ongoing government policy. *Oregon Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1118 (9th Cir.2003). In *Oregon Advocacy Center,* the plaintiffs alleged that the state mental hospital, which was charged with evaluating and treating mentally incapacitated defendants, refused to accept the defendants on a timely basis. *Id.* at 1105-06. The plaintiffs challenged a state policy that results in the delays. *Id.* at 1118.

Although the particular situation precipitating a constitutional challenge to a government policy may have become moot, the case does not become moot if the policy is ongoing. *Id.* "The continued and uncontested existence of the policy that gave rise to [the] legal challenges forecloses [the] mootness argument." *Id.*

The D.C. Circuit similarly held that when a complaint challenges an acknowledged or apparent government policy, the government cannot prevail by

arguing that the controversy became moot when the particular situation at issue resolved itself. *Ukrainian-American Bar Ass'n v. Baker,* 893 F.2d 1374, 1377 (D.C.Cir.1990). The defendants in this case are challenging what they allege to be an ongoing government policy of stonewalling and obfuscation.

As a practical matter, this case is materially similar to a class action in which the class representative's claims may become moot, but there are members of the class whose claims are not moot.  It is actually quite possible that this case will be converted into a class action.  The Supreme Court has held that under the capable of repetition, yet evading review doctrine, the termination of a class representative's claim does not moot the claims of other class members. *See Gerstein,* 420 U.S. at 110 n. 11, 95 S.Ct. 854. This holding applies outside of the class action context when the circumstances of the case are analogous to those found in class action cases. *Oregon Advocacy Ctr.,* 322 F.3d at 1117; *see also Gerstein,* 420 U.S. at 111 n. 11, 95 S.Ct. 854.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court will enter a Preliminary Injunction upon full-hearing, waiving all bonds or other financial requirements. Specifically, Plaintiff prays that this Court

(1) recognize and respect Plaintiffs' status, and the status of all persons similarly situated in the United States Army, as conscientious objectors based solely on legitimate doubts concerning the constitutional qualifications and eligibility of the ***de facto*** President and Commander-in-Chief, Barack Hussein Obama,

(2) enjoin Defendants Robert M. Gates, as well as Colonels Louis B.

Wingate, Wanda L. Good and Thomas D. MacDonald from deploying Plaintiffs or any persons similarly situated to Afghanistan or anywhere on active duty at all until

(3) such time as the constitutional qualifications and eligibility of Barack Hussein Obama to serve as President and Commander and Chief have been established by clear and convincing evidence (which standard of proof befits a constitutional requirement, especially in light of the confusing and conflicting circumstantial evidence set forth in Exhibits E and F).

Respectfully submitted,

Wednesday
July 15, 2009

By:_____

Orly Taitz, DDS, Esq.
California Bar ID No. 223433
FOR THE PLAINTIFFS
**Major General Carol Dean Childers**
**Lieutenant Colonel David Earl Graef**
**Major Stefan Frederick Cook**
Attorney & Counselor at Law
26302 La Paz, Suite 211
Mission Viejo Ca 92691
29839 S. Margarita Pkwy
Rancho Santa Margarita Ca 92688
Ph. W.: 949-586-8110 Cell: 949-683-5411
Fax 949-586-2082

## PLAINTIFF'S VERIFICATION

On this 15th day of July, 2009, the undersigned Plaintiff Major Stefan Frederick Cook appeared in person before me and, having been by me duly administered the oath as required by law, and further having been advised that he made all statements under penalty of perjury, he then and there did depose himself and state that he had read the above-and-foregoing Application for Preliminary Injunction to prevent his deployment to Afghanistan under orders of a chain of command headed by Barack Hussein Obama, and that he had personally verified that all the factual statements contained therein.

As required by Rule 65 the same Plaintiff Major Stefan Frederick Cook also stated that Exhibit A is a true and correct copy of his orders of deployment to active duty, requiring him to report to MacDill Airforce Base in Tampa on July 15 and from thence be transferred to Fort Benning, Georgia, and from thence be deployed in Afghanistan.  Exhibits B and C are true and correct copies of the revocation of these orders and e-mail transmittals of the same.  Exhibit D is a true and correct copy of the "Army Values" card Plaintiff carries at all times.

Plaintiff affirmed and acknowledged that he conscientiously objected to serving under orders from the armed forces of the United States on active duty if and as currently headed by Barack Hussein Obama, fearing that the President obtained and held his office under false pretenses and fraudulent statements concerning his constitutional eligibility, personal history, and background, and that Plaintiff would be acting in violation of international law by engaging in military actions outside the United States under this President's command, and that Plaintiff would thus be simultaneously unable to perform his duties in good

conscience and yet be simultaneously subjecting himself to possible prosecution as a war criminal by the faithful execution of these duties.

In conclusion, Plaintiff affirmed and verified that he submitted this Application for Preliminary Injunction solely for the purposes and reasons stated, and not for any fear or reluctance to serve his country in the armed forces, but purely and simply from his complete distrust of the Commander-in-Chief and the constitutional qualifications of this ***de facto*** President to lead and serve the army, including but not limited to his legitimate authority and power to establish a ***de jure*** chain of command.

This verification and acknowledgement was done and executed on this 15th day of July, 2009, in Tampa, Hillsborough County, Florida.


_____
Major Stefan Frederick Cook, U.S. Army

## **NOTARY'S JURAT**

As aforesaid, Plaintiff Stefan Frederick Cook appeared in person before me on July 15, 2009, to acknowledge, execute, sign under oath, and verify the above and foregoing Application for Preliminary Injunction as Required by Rule 65 of the Federal Rules of Civil Procedure.
I am a notary public, in good standing, authorized and qualified by the State of Florida to administer oaths.


_____
Notary Public, State of Florida,
        Tampa, Hillsborough County
NOTARIAL SEAL AFFIXED ABOVE

Printed Name of Notary:_____, address:_____


My Commission Expires:_____


*Rule 65 Application for Preliminary Injunction*                    31

CERTIFICATE OF SERVICE

The above-and-foregoing Application for Preliminary Injunction was served by facsimile and/or hand delivery on July 15, 2009, on the following parties:

Colonel Thomas D. MacDonald, Garrison Commander, Fort Benning, Georgia

Colonel Wanda L. Good*, Retired **U. S. Army Human Resources Command-St. Louis**
**1 Reserve Way  St. Louis, MO 63132**

Col. Louis B. Wingate, **U. S. Army Human Resources Command-St. Louis 1 Reserve Way, St. Louis, MO 63132** .

Dr. Robert M. Gates, Secretary of Defense, by and through the Pentagon: 1000 Defense Pentagon  Washington, DC 20301-1000

President Barack Hussein Obama,
At
The White House
1600 Pennsylvania Avenue
Washington, D.C. 20500

by and through the Attorney General of the United States, Eric Holder, at

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

and Maxwell Wood, United States Attorney for the Middle District of Georgia, at

U.S. Attorney's Office    Gateway Plaza    300 Mulberry Street, 4th Floor    Macon, Georgia 31201    Tel: (478) 752-3511

And also at:

Columbus Division    1246 First Avenue    SunTrust Building, 3rd Floor    Columbus, Georgia 31901    Tel: (706) 649-7700.

_____
Attorney Orly Taitz, Esquire,
For the Plaintiff Major Stefan Frederick Cook

# EXHIBIT A: Deployment Order Received by U.S. Army Major Stefan Frederick Cook

# Exhibit B: Revocation of Deployment Order July 14, 2009

# Exhibit C:
# E-mail from
# Master Sargeant Matos

# Exhibit D:
# "Army Values" Card

# Exhibit D:
# Affidavit of
# Neal Sankey
# And list of
# Addresses and
# Social Security Numbers
# Utilized by Barack H.
# Obama

# Exhibit E:
# Affidavit of
# Sandra Ramsey Lines
# Concerning
# Barack Hussein Obama's
# Web-published
# Birth Certifcate